## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                                          **Case No.: 8:24-cr-472-TPB-AAS**

**KENNETH VOGEL**

_____/

### REPORT & RECOMMENDATION

Mr. Kenneth Vogel requests dismissal of his indictment because the Hernando County Sheriff's Office (HCSO) did not retain the original dash camera video for the traffic stop that led to his arrest. (Doc. 37). The government opposes Mr. Vogel's motion. (Doc. 40). The court held an evidentiary hearing on December 10, 2025. (Doc. 56).

### I.   Background

An October 31, 2024 indictment charges Mr. Vogel with being a felon in possession of a firearm (Count One) and possession of controlled substances (specifically methamphetamine and cocaine) with the intent to distribute (Count Two). (Doc. 1). The charges stem from an April 26, 2024 traffic stop of a vehicle being driven by Mr. Vogel. HCSO Deputy Austin Clayton is the officer who conducted the traffic stop. During the traffic stop, Deputy Clayton

1

searched the vehicle and found the firearm, ammunition, methamphetamine, and cocaine in the vehicle.

The traffic stop was recorded by the dash camera equipped in Deputy Clayton's patrol car. HCSO admits that the original dash camera video was subsequently destroyed, but that an 8-minute clip of the original dash camera video was posted on HCSO's Facebook page prior to the destruction of the original dash camera video. Both HCSO and Mr. Vogel have a copy of the eight-minute video posted by the HCSO to its Facebook page.

## II.    Summary of Testimony at December 11 Evidentiary Hearing

Two witnesses testified for the government during the evidentiary hearing: HCSO Deputy Austin Clayton and HCSO Corporal Michael Terry. (Doc. 56). Mr. Vogel did not call any additional witnesses.

### a. HCSO Deputy Austin Clayton's Testimony

Deputy Clayton testified he was driving a marked patrol car equipped with dash camera equipment the night he stopped Mr. Vogel. He testified the dash camera equipment was automatically activated as soon as he turned on his emergency lights. Deputy Clayton also testified his patrol vehicle came to a stop behind Mr. Vogel's vehicle a few moments after he activated his siren and lights because Mr. Vogel complied with the stop. During the stop, Deputy Clayton asked Mr. Vogel for his license, registration, and proof of insurance. While Mr. Vogel was digging through what Deputy Clayton assumed was Mr.

Vogel's wallet, a small green plastic bag containing two pills fell out. Deputy Clayton testified that occurred during the portion of the 8-minute video posted to HCSO's Facebook page when Deputy Clayton says "'What's that?' or something along those lines." In response, according to Deputy Clayton, Mr. Vogel picked up the green plastic bag and made a furtive move to drop the bag between the seats without acknowledging Deputy Clayton's question. Deputy Clayton testified that Mr. Vogel's movements with the green plastic bag would not have been visible in the original dash camera video footage because the dash camera video was only capturing the exterior of Mr. Vogel's car and not what Mr. Vogel was doing while still in the front seat of his car.

Ultimately, Deputy Clayton transported Mr. Vogel to the detention center and he cannot remember if he stopped the dash camera's recording before or after he transported Mr. Vogel to the detention center. Either way, he testified he and Mr. Vogel did not speak during his transportation to the detention center.  When Deputy Clayton did manually hit the stop button for the dash camera equipment, he had two questions he had to answer in the HCSO's recording system. First, he had to choose a category for the dash camera recording and he chose "drug seizure." Second, he had to add the case number for the incident before saving the dash camera recording. Deputy Clayton did not know how long the dash camera video would be saved because of his "drug seizure" category selection. He has never done an additional step

after answering those two questions to preserve a video, and he has never pulled a video and separately saved it to a DVD. He learned a year after the traffic stop (in April 2025) that to preserve the video indefinitely he would have to submit a request to the HCSO multimedia personnel. Deputy Clayton did not realize the original video had not been retained until the federal prosecutor asked him for the dash camera video for this case.

### b. HCSO Corporal Michael Terry's Testimony

Corporal Terry testified that he is in charge of the HCSO's media and community relations, including the social media accounts. As part of his job, he meets with other members of the HCSO command staff to identify arrests or other incidents with video to publish on the HCSO social media accounts. The command staff identified the April 24, 2024 traffic stop of Mr. Vogel as of interest for HCSO social media because of the quantity of drugs and the firearm as well as Mr. Vogel's previous arrest history. Corporal Terry testified he thinks the original dash camera video was over an hour long but that he edited it down to the 8-minute video later posted on Facebook to show the action that occurred during the traffic stop, i.e. to show only when the deputy is interacting with the car. Corporal Terry testified the portions of the dash camera video he would have removed would have been the portions where nobody is on the screen and the viewer only sees a blank car. This is because seeing a blank car does not interest social media viewers.

4

Corporal Terry also testified that the category option a deputy chooses when saving the video dictates how long the video is saved. Corporal Terry indicated that the video would have been saved for a year if Deputy Clayton had selected "criminal investigation" and for three years if Deputy Clayton had selected "DUI." Because Deputy Clayton selected "drug seizure," the original video was only retained for 120 days. From what Corporal Terry saw, the original video was purged in August 2024 (approximately 120 days after the traffic stop). The system does not notify the deputy when he or she selects the wrong category.

Once the 8-minute clip was posted on the HCSO Facebook account, that clip was archived permanently because HCSO permanently archives everything it posts online. The 8-minute clip was not made to be used for evidence. Corporal Terry edited it to be a social media post.

## III.   Analysis

Mr. Vogel requests his indictment be dismissed because the government has failed to comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny and its obligations under this court's pretrial discovery order (Doc. 15). The government violates a criminal defendant's due process rights when it suppresses or fails to disclose material exculpatory evidence – the good or bad faith of the government is irrelevant. *Brady*, 373 U.S. at 87. However, "the failure to preserve [] 'potentially useful evidence' does not

violate due process '*unless a criminal defendant can show bad faith on the part of the police.*'" *Illinois v. Fisher*, 540 U.S. 544, 547–548 (2004) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

Nothing in the record supports that the original dash camera video contains material exculpatory evidence. At best, the original dash camera video contains potentially useful evidence to the extent there was some additional interaction between Deputy Clayton and Mr. Vogel that was not included in the 8-minute video clip posted to the HCSO Facebook page and recently produced to Mr. Vogel in discovery. Based on the visual scope of the dash camera video and the interaction already available in the 8-munite clip, the original version of the video would provide no additional evidence addressing whether Mr. Vogel did or did not make furtive movements while interacting with Deputy Clayton.

Consequently, Mr. Vogel must be able to show bad faith on the part of HCSO. The testimony of Deputy Clayton and Corporal Terry did not indicate any bad faith on the part of Deputy Clayton, Corporal Terry, or anyone else at HCSO. Rather, Deputy Clayton made an error in selecting the category for the dash camera recording without realizing the shortened retention duration for the "drug seizure" category he selected.

## IV.    Conclusion

Because Mr. Vogel's due process rights have not been violated by Deputy Clayton's error, the report **RECOMMENDS** that the Motion to Dismiss (Doc. 37) be **DENIED**.[1]

**RECOMMENDED** in Tampa, Florida, on January 5, 2026.

*Amanda Arnold Sansone*

AMANDA ARNOLD SANSONE
United States Magistrate Judge

### NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to request an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.

---

[1] This recommendation should not be read as addressing the appropriate scope for cross-examining Deputy Clayton or any other HCSO witness about HCSO's failure to retain the original dash camera video recording.